IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |
|---|---|
| MARC R. LABGOLD, <br><br> Plaintiff, <br><br> v. <br><br> JOHN D. REGENHARDT, as the Personal Representative of the Estate of Linda D. Regenhardt, *et al.* <br><br> Defendants. | No. 1:22-cv-751 (MSN/IDD) |

**MEMORANDUM OPINION**

This matter comes before the Court on cross-motions for summary judgment. (Dkt. Nos. 21, 26). Upon consideration of the motions, and for the reasons set forth below, the Court will grant Defendants' motion for summary judgment (Dkt. No. 21) and deny Plaintiff's motion for summary judgment (Dkt. No. 26).

**I.    STATEMENT OF UNDISPUTED MATERIAL FACTS**

Plaintiff Marc Labgold is a patent attorney. (Dkt. No. 22) Defendants' Statement of Undisputed Material Facts ("DSOF") ¶ 1. In 2006, Plaintiff became the CEO of biotechnology company Antara Biosciences, Inc. ("Antara"). *Id.* ¶ 2. In 2007, Antara began to experience financial difficulties and shut down its operations. *Id.* Plaintiff resigned as Antara's CEO in July 2007. *Id.*

In June 2010, Antara filed for bankruptcy protection in the United States Bankruptcy Court for the Central District of California ("Antara Bankruptcy Case"). *Id.* ¶ 3. In 2010, former

employees of Antara filed a lawsuit against one of Plaintiff's business partners in California state court ("Antara Creditors' California Case"). *Id.* ¶ 4. Plaintiff was added as a defendant in the Antara Creditors' California Case in September 2012. *Id.* ¶ 5. The Antara creditors alleged that Plaintiff was liable based upon theories of, *inter alia*, fraud, embezzlement, and conversion. *Id.*

In December 2012, Plaintiff was unmarried and individually owned his residence located at 2257 Compass Point, Lane, Reston, Virginia ("Compass Point Residence"). *Id.* ¶ 6. On December 21, 2012, Plaintiff married Taryn Labgold. *Id.* On January 7, 2013, Plaintiff transferred the Compass Point Residence to himself and his wife as tenants by the entirety, and the deed was recorded in the Fairfax County land records on January 9, 2013. *Id.*

Less than four months later, in April 2013, Plaintiff first met with bankruptcy attorney Linda Regenhardt regarding potentially filing for personal bankruptcy protection. *Id.* ¶ 8. On July 23, 2013, Linda Regenhardt filed a bankruptcy petition under Chapter 7 on behalf of Plaintiff with the United States Bankruptcy Court in the Eastern District of Virginia ("Chapter 7 Bankruptcy Proceeding"). *Id.* ¶ 9. Although the Compass Point Residence was listed as an exempt asset in Plaintiff's bankruptcy schedules, the January 7, 2013 transfer was not disclosed as it should have been in response to a question in Plaintiff's signed statement of financial affairs. *Id.* ¶ 11. At an August 29, 2013 meeting of creditors, the bankruptcy trustee asked for a copy of the deed evidencing that the Compass Point Residence was held as tenants by the entirety, which the Plaintiff provided the same day. *Id.* ¶ 12.

In the early part of 2014, three adversary proceedings were instituted against Plaintiff in the United States Bankruptcy Court. First, on January 27, 2014, the U.S. Trustee's office filed a complaint seeking to deny Plaintiff a discharge under multiple provisions of 11 U.S.C. § 727(a) ("U.S. Trustee Adversary Proceeding" or "727 Proceeding"). DSOF ¶ 13. In addition to the

2

transfer of the Compass Point residence, the bases asserted by the U.S. Trustee for denial of discharge included the following alleged conduct by Paintiff: (1) Plaintiff's fraudulent transfer of funds to Bedford Funding LLC, a company that Plaintiff created but denied having knowledge of while under oath and failed to disclose in his petition, (Dkt. No. 22-2) (Pl. Ex. 2 ("Trustee's Compl.") ¶ 45); (2) Plaintiff's failure to keep or preserve records related to Bedford Funding LLC (*id.* ¶¶ 49–50); (3) Plaintiff's false oaths relating to the value of his law firm, his spouse's income, and his ownership interest in Bedford Funding LLC (*id.* ¶ 53); (4) Plaintiff's concealment of his law firm's accounts and assets (*id.* ¶ 45); (5) the unexplained loss of assets including funds received from Bedford Funding LLC (*id.* ¶ 58); and (6) Plaintiff's failure to produce bank statements and financial records relating to Bedford Funding LLC in violation of court order (*id.* ¶¶ 61–62). Second, on January 27, 2014 the Chapter 7 Trustee filed a complaint to avoid the transfer of the Compass Point residence pursuant to 11 U.S.C. § 548(a)(1)(A) and § 548(a)(1)(B) ("Chapter 7 Trustee Adversary Proceeding"). DSOF ¶ 14. And, third, on February 28, 2014, the Antara creditors instituted an adversary proceeding seeking to deny discharge as to their claims ("Antara Adversary Proceeding" or "523 Proceeding"). *Id.* ¶ 15.

On November 10, 2014, Plaintiff and the Chapter 7 Trustee settled the Chapter 7 Trustee Adversary Proceeding whereby Plaintiff agreed to purchase the Compass Point Residence from the bankruptcy estate for $180,000. *Id.* ¶ 17. A trial in the Antara Adversary Proceeding took place from November 17 to 21, 2014, and the trial continued in February 2015. *Id.* ¶ 18.[1]

---

[1] On June 16, 2015, the Bankruptcy Court dismissed the Antara Adversary Proceeding action without prejudice, finding that the court lacked subject matter jurisdiction in light of the disposition of the U.S. Trustee's Adversary Proceeding discussed below. *Id.* ¶ 29; DEX 5.

As to the U.S. Trustee Adversary Proceeding, the Bankruptcy Court held a trial in December 2014 presided over by Judge Kenney. *Id.* ¶ 19. The Bankruptcy Court issued his Findings of Fact and Conclusions of Law in that proceeding on January 14, 2015. *Id.* ¶ 20. Bankruptcy Court denied Plaintiff a discharge under Section 727(a)(2)(A). *Id.* The Bankruptcy Court's sole basis for denial of discharge was the pre-petition transfer of the Compass Point Residence to himself and his wife as tenants by the entirety. *See* Defendants' Ex. ("DEX") 1 ("Bankruptcy Findings"). The Bankruptcy Court concluded that the transfer of the Compass Point Residence evidenced all the badges of fraud except concealment. *Id.* at 10–11. It also rejected the notion that the transfer was for legitimate estate planning purposes, describing that argument as "not being supported by any credible evidence"—that evidence being the testimony of Plaintiff and his attorney who advised him regarding the transfer (Mark Sandground). The Bankruptcy Court specifically made note of the fact that Sandground was not a trusts and estates attorney and, other than the deed of gift related to the transfer, had not prepared any other testamentary documents for the Plaintiff. *Id.* at 13. The Bankruptcy Court explained that the provisions of Section 727(a) are "stated in the disjunctive," meaning that [p]roof of any one of the subsections contained in Section 727 is sufficient to warrant a denial of discharge." *Id.* at 10. Given that the court concluded a denial of discharge was warranted based on the fraudulent transfer of the Compass Point Residence, it found it to be "unnecessary to address the remaining allegations" made by the U.S. Trustee. *Id.*

Plaintiff appealed the Bankruptcy Court's findings in the U.S. Trustee Adversary Proceeding, but did not appeal the conclusion that the transfer exhibited badges of fraud. DSOF ¶ 26. The District Court affirmed the Bankruptcy Court's decision, and the Fourth Circuit subsequently affirmed the district court decision. *Id.* ¶¶ 27–28.

## II. PROCEDURAL HISTORY

This matter was initially filed in the Circuit Court for the City of Alexandria, Virginia. DSOF ¶ 30. Defendants removed the lawsuit to the Eastern District of Virginia. *Id.* ¶ 31. The district court remanded the case back to state court due to lack of subject matter jurisdiction on the grounds that Plaintiff lacked standing. *Id.* The basis of the finding was that the cause of action was an asset of the bankruptcy estate because the cause of action had accrued pre-petition under Virginia law and, the claim therefore became an asset of the estate to be solely administered by the Chapter 7 trustee under bankruptcy law. *Id.* Upon remand, the Alexandria Circuit Court dismissed the case based on the same reasoning. *Id.* ¶ 32. Plaintiff appealed to the Virginia Supreme Court, which reversed the Circuit Court's ruling and concluded that although pre-petition breaches belong to the bankruptcy estate, post-petition breaches raised belong to Plaintiff. *Id.* ¶ 33; DEX 14.[2] A nonsuit was entered on December 15, 2021. DSOF ¶ 34.

Plaintiff refiled his legal malpractice action against Linda Regenhardt with the Circuit Court for the City of Alexandria, Virginia on May 25, 2022, after which Defendants timely removed the matter to this Court. *See* (Dkt. No. 1) ("Notice of Removal"); (Dkt. No. 1-2 ("Compl.")). In the Complaint, Plaintiff raises one count of legal malpractice against Defendants, alleging that Linda Regenhardt's "post-petition acts . . . gave rise to the denial of discharge." Compl. ¶ 23.

The parties have filed cross-motions for summary judgment, which are fully briefed. This Court heard oral argument on the matter on October 6, 2023. The matter is now ripe for disposition.

---

[2] In October 2017, while the appeal to the Virginia Supreme Court was pending, Linda Regenhardt passed away. DSOF ¶

5

### III. STANDARD OF REVIEW

Summary judgment is proper where, viewing the facts in a light most favorable to the non-moving party, there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Evans v. Tech. Apps. & Servs. Co.*, 80 F.3d 954, 958–59 (4th Cir. 1996). "A material fact is one 'that might affect the outcome of the suit under the governing law.'" *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (citing *Anderson*, 477 U.S. at 248).

The movant bears the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Carrett*, 477 U.S. 317, 327 (1986). If the movant has met that burden, the non-moving party must demonstrate that such an issue of fact exists. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). "A party opposing . . . summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The non-movant may not rest upon a "mere scintilla" of evidence, but must instead offer specific facts supporting its position. *Celotex*, 477 U.S. at 324. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Id.* at 247–48. Rather, to survive a summary judgment motion, "[t]he disputed facts must be material to an issue necessary for the proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact must be adequate to support a jury verdict." *Thompson Everett, Inc. v. Nat'l Cable Adver., L.P.*, 57 F.3d 1317, 1323 (4th Cir. 1995).

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment

6

as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (cleaned up). On cross-motions for summary judgment, the court "resolves all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion" when considering the individual motion. *Id.* (cleaned up).

IV.   **ANALYSIS**

Under Virginia law, legal malpractice requires: (1) the existence of an attorney-client relationship which gave rise to a duty, (2) breach of that duty by the defendant attorney, and (3) that the damages claimed by the plaintiff client must have been proximately caused by the defendant attorney's breach. *Shipman v. Kruck*, 593 S.E.2d 319, 322 (Va. 2004). The plaintiff in a legal malpractice action bears the burden to prove all three elements. *Williams v. Joynes*, 677 S.E.2d 261, 264 (Va. 2009).

There is no dispute that an attorney-client relationship existed between Linda Regenhardt and Plaintiff. Plaintiff alleges Linda Regenhardt breached the standard of care as Plaintiff's bankruptcy attorney by (1) failing to list the transfer of the Compass Point Residence on the disclosure form in the Chapter 7 Bankruptcy Proceeding and failing to advise Plaintiff to amend the form upon discovery of the omission; (2) recommending a settlement offer to the Chapter 7 trustee for the Compass Point Residence that was a low ball offer and patently unacceptable; (3) failing to advise Plaintiff that the transfer of the Compass Point Residence six months before the filing of the petition in Chapter 7 Bankruptcy Proceeding created a risk of denial of discharge; and (4) failing to recognize that the transfer of the Compass Point Residence was avoidable and failing to recommend that Plaintiff purchase the equity in the residence or surrender it to the Chapter 7 Trustee. (Dkt. No. 27) ("Pl. Mot.") at 9. Plaintiff argues that had Linda Regenhardt not breached the standard of care in these specific ways, then either the (1) the U.S. Trustee would not have

filed the U.S. Trustee Adversary Proceeding seeking to deny Plaintiff a discharge, or (2) Plaintiff would have prevailed at the trial of the U.S. Trustee's Adversary Proceeding. *Id.* at 10.

Defendants argue that even if the Linda Regenhardt had committed the breaches alleged by Plaintiff, they are nevertheless entitled to summary judgment because Plaintiff cannot establish the element of causation. The Court agrees. Plaintiff cannot establish that any conduct by his attorney proximately caused either the U.S. Trustee to file its adversary proceeding seeking to deny discharge or that Plaintiff would have prevailed at the trial.[3] Regarding causation, "[i]n a legal malpractice action, the fact of negligence alone is insufficient to support a recovery of damages. The client must prove that the attorney's negligence proximately caused the damages claimed." *Campbell v. Bettius*, 421 S.E.2d 433, 436 (Va. 1992). Where, as here, a legal malpractice action arises out of an underlying litigation, it requires a plaintiff to prove, as part of causation, the "case within the case," in which the plaintiff must present evidence that would have been presented in the underlying action. *Williams v. Joynes*, 677 S.E.2d at 264 (citing *Whitley v. Chamouris*, 574 S.E.2d 251, 252–53 (Va. 2003)).[4] "In order to show proximate cause and resulting damages, a

---

[3] Plaintiff also argues that he is entitled to partial summary judgment with regard to the $600,000 that he paid to settle the Antara Creditors' California Case and that he is the rightful owner of certain patents sold by Antara. These matters are not relevant to the Court's summary judgment analysis because if Plaintiff cannot prove his theories of causation as to any legal malpractice by Linda Regenhardt, then he cannot recover his claimed alleged damages, including the $600,000. Having failed to establish causation, as discussed herein, Plaintiff cannot seek summary judgment for the $600,000 at issue in the Antara Creditors' California Case without first proving Defendants' liability.

[4] Plaintiff concedes that proving a case within a case is required in "some legal malpractice contexts," but suggests that in certain situations a plaintiff need not show that he would have prevailed on the merits of the underlying litigation. (Dkt. No. 33) at 2 (citing *Org. of Chinese Americans, Inc. v. Damron*, No. CV 22-178 (BAH), 2023 WL 2301977, at *11 (D.D.C. Mar. 1, 2023)). There are several problems with Plaintiff's argument. The case cited by Plaintiff was decided on a different procedural posture—a motion to dismiss. And, the passage cited by Defendants describes a theory of litigation malpractice not alleged here—in *Damron*, the attorneys' clients had not been informed of the attorneys' conflict of interest and therefore had not obtained the advice of independent (that is, non-conflicted) counsel. The clients in *Damron* argued that had they been so informed, they would have obtained the advice of independent counsel informing them of the weakness of their legal position and/or would have known to avoid litigation entirely or to engage in earlier settlement talks. That scenario is completely different from the facts here where, among other differences, there is no allegation of a conflict of interest by Linda Regenhardt.

8

plaintiff must present sufficient evidence to convince the fact finder in the malpractice case that he would have prevailed in the underlying case absent the attorney's alleged negligence." *Whitley*, 574 S.E.2d at 253.

Plaintiff argues that had Linda Regenhardt not breached the standard of care as his attorney, then either (1) the U.S. Trustee would not have filed the U.S. Trustee Adversary Proceeding seeking to deny Plaintiff a discharge, or (2) Plaintiff would have prevailed at the trial of the U.S. Trustee's Adversary Proceeding. The Court will address why Plaintiff cannot establish causation under either theory.[5]

### A.  Institution of U.S. Trustee Adversary Proceeding

First, Plaintiff asserts that but for Linda Regenhardt's breaches, the U.S. Trustee would not have initiated its adversary proceeding against Plaintiff seeking to deny Plaintiff a discharge. All of Plaintiff's allegations of breaches committed by his bankruptcy attorney relate to the Compass Point Residence.[6] Critically, for the purposes of causation, the U.S. Trustee sought a denial of discharge under 11 U.S.C. § 727(a) on multiple grounds completely unrelated to the transfer of the

---

[5] Although it is generally the fact finder who decides whether a plaintiff has shown that defendant's negligence was a proximate cause of the plaintiff's loss, when "the evidence is such that reasonable minds could not differ as to the outcome, the issue of proximate cause should be decided by the court, not the jury." *Hazel & Thomas, P.C. v. Yavari*, 465 S.E.2d 812, 815 (Va. 1996); *see also Gregory v. Hawkins,* 468 S.E.2d 891, 893 (Va. 1996) ("the question of proximate causation in an attorney malpractice case, as in any negligence action, is subject to an initial determination of law before becoming an issue to be decided by the trier of fact"); *Rogers v. Deane* 992 F. Supp. 2d 621, 629-33 (E.D. Va. 2014). As explained below, the Court decides the issue of proximate cause at the summary judgment stage because the facts in the record make clear that reasonable minds could not differ as to the outcome of causation.

[6] As outlined above, Linda Regenhardt's alleged breaches include (1) failing to list the transfer of the Compass Point Residence on the disclosure form in the Chapter 7 Bankruptcy Proceeding and failing to advise Plaintiff to amend the form upon discovery of the omission; (2) recommending a settlement offer to the Chapter 7 trustee for the Compass Point Residence that was a low ball offer; (3) failing to advise Plaintiff that the timing of the transfer of the Compass Point Residence created a risk of denial of discharge; and (4) failing to recommend that Plaintiff purchase the equity in the Compass Point Residence or surrender it to the Chapter 7 Trustee.

Compass Point Residence. Specifically, as described in the U.S. Trustee's Complaint in its adversary proceeding, the grounds for its seeking a denial of discharge included: (1) Plaintiff's alleged fraudulent transfer of funds to Bedford Funding LLC, a company that Plaintiff allegedly created but denied having knowledge of while under oath and failed to disclose in his bankruptcy petition (Trustee's Compl. ¶ 45); (2) Plaintiff's alleged failure to keep or preserve records related to Bedford Funding LLC (*id.* ¶¶ 49–50); (3) Plaintiff's alleged false oaths relating to the value of his law firm, his spouse's income, and his ownership interest in Bedford Funding LLC (*id.* ¶ 53); (4) Plaintiff's alleged concealment of his law firm's accounts and assets (*id.* ¶ 45); (5) the unexplained loss of assets including funds received from Bedford Funding LLC (*id.* ¶ 58); and (6) Plaintiff's alleged failure to produce bank statements and financial records relating to Bedford Funding LLC in violation of a court order (*id.* ¶¶ 61–62). There were therefore at least six other grounds beyond the transfer of the Compass Point Residence on which the U.S. Trustee was seeking a total denial of discharge.

In order to prove that the U.S. Trustee would not have filed the U.S. Trustee Adversary Proceeding but for Linda Regenhardt's post-petition breaches, Plaintiff must establish—at the very least—either that the U.S. Trustee would have chosen not to pursue the adversary proceeding on any of these six other grounds or that Linda Regenhardt's breaches (or the Compass Point Residence) were somehow so closely connected to each these other grounds that the U.S. Trustee would not have had a reason to institute the proceeding. But Plaintiff has offered no evidence whatsoever regarding any of these independent reasons or why the U.S. Trustee would not have initiated an action based on these other independent grounds. Notably, the expert opinion of Bruce Henry—the evidence Plaintiff primarily relies on in support of its theory—omits reference to these other grounds upon which the U.S. Trustee cited as a basis for denial of discharge.

Plaintiff relies on the expert opinion of Bruce Henry to establish causation.[7] In Mr. Henry's report, he states that "[b]ut for Ms. Regenhardt's breaches of the standard of care, it is more likely than not that . . . the U.S. Trustee would not have filed the action to deny [Plaintiff's] discharge." Pl. Mot. at 10 (quoting Bruce Henry expert report). Plaintiff argues that summary judgment is precluded (and a triable issue exists) merely because he has set forth expert testimony on the element of causation. *See* (Dkt. No. 31) ("Pl. Opp.") at 7–11, 15–16. Plaintiff is mistaken. When the proximate cause of an injury is left to pure speculation or conjecture—even when there is expert witness testimony offered—the claim nonetheless fails as a matter of law. "Evidence tending to show a causal connection must be sufficient to remove the case out of the realm of speculation and conjecture and into the realm of legitimate inference before submitting it to a jury for its determination." *Blacka v. James,* 139 S.E.2d 47, 50 (Va. 1964) (citing *Hawkins v. Beecham*, 191 S.E. 640, 643 (Va. 1937)). As Defendants point out, whether expert opinions are admissible under *Daubert*, on the one hand, and whether that opinion creates a genuine triable issue of fact, on the other hand, are two distinct inquiries. *See Miller v. Mandrin Homes, Ltd.*, 305 F. App'x 976, 978–79 (4th Cir. 2009) ("Even if expert testimony meets the *Daubert* admissibility standards, the question remains whether the evidence creates a genuine issue of material fact, i.e., one that would allow the jury to find for the non-moving party on an essential element of the claim. If no genuine issue of fact exists, summary judgment is appropriate.").

---

[7] The other evidence Plaintiff relies on for the causation element is the deposition testimony of Plaintiff's attorney who represented Plaintiff in adversary proceedings instituted against him. The attorney's testimony, which indicated that "had Plaintiff's bankruptcy discharge been granted, he believes that Plaintiff would have prevailed in the [Antara Creditors' California Case] and the [Antara Creditors Adversary Proceeding]," (Dkt. No. 27 ¶ 14) is purely speculative and does not change the Court's conclusion.

11

Here, the only evidence in the record to support the theory that the U.S. Trustee would not have initiated a 727 proceeding against Plaintiff is speculative; there is no *factual* evidence in the record to support such an inference. For instance, at his deposition, Mr. Henry admitted that he could not read the U.S. Trustee's mind and was therefore speculating as to the U.S. Trustee's reasoning, thought process, intent, and motive behind filing the adversary proceeding. *See* (Dkt. No. 22-10) (Pl. Ex. 10 at 58:9–60:2). Thus, Mr. Henry's opinions about why the U.S. Trustee filed the adversary proceeding in the first place are admittedly based on speculation. Under these circumstances—when the expert witness's testimony on an element of the claim is entirely speculative—it is appropriate to grant Defendants' summary judgment.

Two cases cited by Defendants support this analysis. In *Miller v. Mandrin Homes*, the Fourth Circuit held that if expert testimony is predicated on a chain of inferences supporting a mere possibility that an essential element is present, that testimony is insufficient to create a triable issue of fact. 305 F. App'x at 978–79. And in *Baserva v. Remes*, No. 1:08-cv-997, 2009 WL 2232749 (E.D. Va. July 23, 2009), *aff'd*, 403 F. App'x 879 (4th Cir. 2010), the court awarded summary judgment to defendants on a legal malpractice claim because plaintiff could not prove causation notwithstanding plaintiff's expert witness testimony. In *Baserva*, the plaintiff brought a legal malpractice action against his immigration attorney, alleging the attorney failed to file certain motions leading to his subsequent detention by ICE. The court concluded that the expert reports and deposition testimony of Plaintiff's expert "fail[ed] to create a triable issue of material fact as to causation" because (1) ICE's decision to arrest plaintiff was at the agency's discretion, and (2) there was no evidence as to other important steps in the causal chain, including that DHS would have joined a motion to reopen immigration proceedings (a necessary step) and that the joint motion would have prevented the arrest. 2009 WL 2232749, at *1–3. Here, similar to ICE's

12

independent decision to arrest plaintiff "under its mandate to enforce immigration laws" in *Baserva*, the decision to file the adversary proceeding against Plaintiff in this case was an independent decision by the U.S. Trustee's office pursuant to its mandate to enforce bankruptcy laws and promote the integrity of the bankruptcy system.

Plaintiff has only presented non-speculative evidence in the form of expert witness testimony on the element of causation as it relates to his first theory (that but for his bankruptcy attorney's breaches, the U.S. Trustee would not have instituted an adversary proceeding). In fact, there were multiple independent grounds beyond the Compass Point Residence upon which the U.S. Trustee could have (and did) seek denial of discharge; Plaintiff addresses none of these grounds. As a result, Defendants have established that Plaintiff cannot establish proximate cause under his first theory.

### B. Prevailing at the U.S. Trustee Adversary Proceeding

Plaintiff's second theory is that but for the alleged post-petition breaches by Linda Regenhardt, Plaintiff would have prevailed in the trial of the U.S. Trustee Adversary Proceeding. But Plaintiff cannot prove causation as a matter of law on this theory either. Again, the only evidence advanced by Plaintiff to support causation on this element is the speculative opinions of Mr. Henry. *See* Pl. Mot. at 10 ("But for Ms. Regenhardt's breaches of the standard of care, it is more likely than not that . . . [the U.S. Trustee] would not have prevailed.") (citing Henry expert report). For the same reasons as discussed above with respect to Plaintiff's first theory of causation, that is insufficient to create a triable issue of fact with the second theory too.

Not only is there a lack of non-speculative evidence in the record to suggest that Linda Regenhardt's post-petition conduct proximately caused the Bankruptcy Court's decision to deny Plaintiff's discharge, but the undisputed evidence actually demonstrates that the denial was based

13

solely on the January 2013 fraudulent transfer—*pre-petition* conduct. But all of Plaintiff's allegations of Linda Regenhardt's purported breaches occurred *post-petition*.[8] The Bankruptcy Court's decision on this is clear: The January 2013 transfer of the Compass Point Residence exhibited every badge of fraud except for concealment. The Court specifically concluded that the respective testimony of Plaintiff and his personal friend and attorney, Marc Sandground, as to the purported innocent reasons for the transfer, was not credible. Based upon its factual findings, the Bankruptcy Court denied Plaintiff a discharge under Section 727. Because the fraudulent transfer alone provided grounds for a wholesale discharge, the Court did not reach the other grounds for denial asserted by the U.S. Trustee. Indeed, Plaintiff admits that the denial of discharge was based on the "finding that Dr. Labgold had acted improperly when transferring the Compass Point Lane property to his new wife and then filing for bankruptcy." Compl. ¶ 34. Plaintiff also admits that the Bankruptcy Court "specifically stated that in reaching its decision, it did not rely upon Regenhardt's negligently drafted Petition." Compl. ¶ 35.

The Bankruptcy Findings do not reference a single post-petition act or omission as a basis for the denial of discharge. Nor do they cite any of Linda Regenhardt's alleged breaches. Importantly, the Bankruptcy Court expressly held that concealment was not a basis for its decision, noting that the deed had been recorded in the land records. Bankruptcy Findings at 14. The Bankruptcy Court also cited Linda Regenhardt's testimony that the omission of the transfer in the Statement of Financial Affairs was simply a mistake, and "the [Bankruptcy] Court accept[ed] [her] testimony" regarding her explanation for the omission. *Id.* As such, Plaintiff's fraudulent conduct

---

[8] Indeed, the Virginia Supreme Court's decision in the earlier iteration of this case forecloses Plaintiff Labgold's legal malpractice claim that is premised upon Linda Regenhardt's post-petition conduct, as that claim would belong to the bankruptcy estate.

in January 2013, which occurred *pre-petition* and before any of the alleged breaches by Linda Regenhardt, is the sole proximate cause of his discharge denial. Plaintiff cannot establish that but for any purported breach by his bankruptcy attorney, he would have prevailed in the U.S. Trustee Adversary Proceeding. To the contrary, the evidence establishes that the outcome of the proceeding was based entirely on a pre-petition transfer; Defendants have established as a matter of law that Plaintiff has not, and cannot, present evidence in support of causation on its second theory either.[9]

## V.   CONCLUSION

For the reasons stated above, the Court will grant Defendants' motion for summary judgment and deny Plaintiff's motion for summary judgment in an order to be issued with this Memorandum Opinion.

/s/
Hon. Michael S. Nachmanoff
United States District Judge

Alexandria, Virginia
November 1, 2023

---

[9] Defendants do not need any expert witness testimony in order to prevail on summary judgment. Given that the analysis of the causation issue turns entirely on the other evidence in the record, the Court decides the cross-motions for summary judgment without any consideration of Defendants' expert witness testimony. Accordingly, the Court need not address Plaintiff's Motion to Exclude Defendants' Expert's Testimony, (Dkt. No. 24), and will deny that motion as moot in an accompanying order.